## CHRISTINA WATKINS *vs.* F. P. GOODALL.

Hampden.   Sept. 23, 1884. — Feb. 27, 1885.   C. ALLEN & COLBURN, JJ., absent.

A landlord, who lets tenements in a building to different tenants, with a right of way in common over an uncovered piazza annexed to the rear of the building, and extending its whole length, and over steps leading from the end of the piazza down to the street, is liable to a tenant injured, while in the exercise of due care, by falling upon ice accumulated upon the piazza and steps, by reason of water flowing thereon from a defective pipe connecting with the roof of the building.

In an action for personal injuries occasioned to the plaintiff, by falling upon ice accumulated on an uncovered piazza and steps of a building owned by the defendant, and occupied by the plaintiff and by other tenants, the plaintiff testified that she knew ice had accumulated there, and that it had been there several days before the accident; that there was a ridge of ice on the piazza and also on the steps; that, during the night before the accident, it had snowed and covered the ice; that, when she heard a bell rung by a yeast-man, she took a cup and a broom, and started out of the back door of her tenement for the street; that, as she went along the piazza, she pushed the snow in front of her with one hand upon the broom and the other holding the cup ; that she looked towards the yeast-man; that she " had not presence of mind to be thinking about ice," but " was thinking about yeast; " and that she struck the ridge of ice and fell. *Held*, that the question whether the plaintiff was in the exercise of due care was for the jury.

TORT for personal injuries occasioned to the plaintiff by falling upon ice accumulated on an uncovered piazza and steps belonging to the defendant. Trial in the Superior Court, before

*Pitman*, J., who reported the case for the determination of this court, in substance as follows:

The defendant admitted that he was the owner of a certain block of five tenements in Holyoke, two stories in height, all occupied, and one of which was, at the time of the accident, January 13, 1883, and had been for about three years previously, occupied by the plaintiff, with her husband and family, as tenants at will of the defendant, paying rent monthly therefor; that there was a common uncovered stoop or back piazza, extending past the rear of said block, and annexed thereto, to Center Street, and back entrances connected with said piazza from each tenement. Two wooden steps at the end of the piazza led down to Center Street. The block was situated on the corner of Ely Street and Center Street, and a front passageway, down steps which were protected by a portico, connected each tenement with Ely Street. A rail was placed on the outer edge of the back piazza, extending as far as the stairs, and from thence to the street a picket fence extended. Three spouts conducted the water from the eaves at the back of the building, passing down to the sewer from the centre and at each end of the block, the conductor near Center Street being attached to the brick wall of the building and passing under the piazza close to the building. The defendant admitted that the back piazza and passageway to Center Street were for the use of all the tenants in common who might occupy said block.

The plaintiff introduced evidence tending to prove that, on the morning of January 13, 1883, while passing across the back piazza to Center Street for yeast, she slipped and fell upon a ridge of ice which had accumulated near the spout, and was thrown or slipped down the stairs, where ice had also accumulated. The plaintiff testified that she knew ice had accumulated near the conductor, and that it had been there for several days previously to the accident; that the ice was caused by the water from the conductor, which ran out on to the platform, because of a broken place in the pipe, which was in plain view from the piazza; that at that time the ridge of ice was on the piazza and also on the steps, but the steps were not all covered with ice; that during the night it had snowed, and covered the ice; that, when she heard the bell of the yeast-man,

she took a cup and a broom and started out of the back door for Center Street; that, while she was going along on the piazza, she struck this ridge of ice and fell; that, as she was going along, she was pushing the snow in front of her with one hand upon her broom and the other holding her cup; that, as she was going along, she looked towards the yeast-man; that she "had not presence of mind to be thinking about ice," but "was thinking about yeast."

The plaintiff also introduced evidence tending to show that it was only in cold weather that any annoyance was caused, and that the water causing the ridge of ice came from a broken con- ductor, which the plaintiff testified was broken off two or two and a half feet above the piazza floor; that no piece was gone, but it was shoved to one side; that the break was in plain sight; that the defendant often passed by it; and that it had existed nearly a year. The plaintiff's husband testified that the break was caused by the bursting of the conductor, and that a crack in the pipe extended in the direction of the pipe; that an accu- mulation of ice in the conductor caused the water to flow out when a thaw came, and run out on to the piazza, and was there freezing and thawing according to the changes in the weather. The plaintiff and her witnesses all testified that they had not made any complaint to the defendant, or any of his agents, in reference to any ice on the piazza, or in regard to any defect in the conductors. The plaintiff also introduced evidence that, at different times before the accident, ice had accumulated from the foot of the conductor in a ridge partly across the piazza, caused by the water flowing from said defect.

The plaintiff testified that she paid the rent herself, sometimes to the defendant at his store, which was about ten minutes' walk from the block, and that sometimes he had collected it at the tenement; that one of the defendant's clerks lived in the block and used this piazza; that he acted as agent of the defend- ant in making some repairs in the different tenements, and col- lected the rent sometimes. All the other witnesses, except the plaintiff and her husband, testified that they had not noticed any defect in the conductor until the time of the accident.

It was not disputed that the defendant left the city on Janu- ary 10, 1883, and did not return until after the accident. He

testified that he had no knowledge of any break in the pipe before the accident, and until his return; that he had no recollection of seeing ice on the stoop, but was unable to swear that he had not; and that he took charge of his block and looked out for it himself. It was admitted that no person had complained to the defendant about the alleged defect in the conductor, or had called his attention to the ice on the piazza.

The case was submitted to the jury, under full instructions; and a verdict was returned for the plaintiff. If, upon the foregoing evidence, the action could be maintained, judgment was to be entered on the verdict; otherwise, a new trial to be ordered.

*E. W. Chapin*, for the defendant.

*G. M. Stearns*, for the plaintiff.

W. ALLEN, J. The defendant, having let to different tenants the five tenements with a common passageway, was bound to keep the passageway in repair. *Looney* v. *McLean*, 129 Mass. 33. But the duty to repair did not include the removal of snow or ice which might accumulate on the passageway, and render the use of it difficult or dangerous. *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357. There is no evidence to sustain the allegation of a breach of the defendant's duty as landlord to keep the passageway in repair.

The defendant also owed the duty to his tenants who used the passageway under the contract of letting, and to all persons having occasion to use it in connection with the tenements let, not wantonly or negligently to place a dangerous obstruction upon it. His duty to them in respect to the passageway was analogous to his duty to travellers in respect to a highway. See *Kirby* v. *Boylston Market Association*, 14 Gray, 249. He is liable for obstructions negligently caused by him, but not for not removing obstructions arising from natural causes, or the acts of other persons, and not constituting a defect in the passageway itself. He would be liable for negligently leaving a coal scuttle in a dangerous position, but not for not removing one so placed by another person.

The conductor and pipes were used in common for the five tenements, and, as regards the obligation to keep them in repair, the defendant was the occupant of them as he was of the passageway. The jury must have found that the pipe was out of

repair by the fault of the defendant; and that the want of repair of the pipe occasioned the dangerous accumulation of ice which caused the injury to the plaintiff. To establish the liability of the defendant, it must further appear that he was bound to keep the pipe in repair, so that it would not so discharge water upon the passageway as to make it dangerous. The conductor with which the pipe was connected extended under the eaves of all of the five tenements, and the pipe extended from the conductor through the floor of the passageway and discharged under it. The passageway was uncovered, and, but for the conductor, the dropping from the eaves would have fallen upon it. The question is not whether the defendant was under any obligation to put the conductor and pipes there, or to take any measures to protect the passageway from water from the eaves; but whether, having placed them there and arranged them so that they would divert the water from its natural course and carry it away from the platform, and having let the tenements in that condition, he was liable for a want of repair in the pipe by which the water was discharged artificially in one place upon the platform so as to make it dangerous when frozen. We think it was an artificial formation of ice, resulting directly from the negligent omission of the defendant, for which he was as much responsible as if he had placed the water there by his voluntary act.

The question whether the plaintiff was in the exercise of due care was left to the jury, without objection from the defendant; and we cannot say, upon all the circumstances which were before them, that there was no evidence upon which they could pass.                          *Judgment on the verdict.*