GERARDO TORRES, Plaintiff and Appellant, *v.* RAMÓN FERNÁNDEZ PÉREZ, Defendant and Appellee.

No. 7807.   Argued November 9, 1939.—Decided April 18, 1940.

*F. Fernández Cuyar* for appellant.   *Angel A. Vázquez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Gerardo Torres brought an action against Ramón Fernández and claimed $12,800 as damages. The issue being joined the case went to trial. On May 13, 1938, the court rendered judgment for the defendant, with costs but excluding attorney's fees, because, in its opinion, there was no rashness in prosecuting the action. The plaintiff appealed.

The facts relied upon by him for his action are set forth in the complaint, briefly, as follows:

The plaintiff and his wife with three children were living in one of the tenements of the house at 37 General Contreras Street, San Juan, P. R., belonging to the defendant, ever since October 31, 1934.

On July 16, 1937, plaintiff's wife, while trying to climb the wooden steps put up in the yard for the use of the tenants, the third step gave way under her weight and she fell on the concrete floor of the yard and suffered a comminuted fracture of the left femur and several other bruises.

The accident was due exclusively to the fault, carelessness or failure of the defendant who, having previous knowledge of the bad condition of the steps, had failed to make the necessary repairs. The way the steps had been built was dangerous owing to the angle and height of each step. Their wooden material, specially that of the third step, was in a decayed condition.

The defendant in his answer admitted the existence of the steps but denied that the same had been put up there for the use of the tenants, and alleged that it led to the roof and was not a part of the tenement, as it had been exclusively built for making repairs to the roof, all of which was known to the woman Ortiz and the plaintiff, who moreover had been forbidden to use the same.

He admitted that at the time mentioned the woman Ortiz tried to climb the steps, but alleged that she did so knowing that she should not do it.

He denied the fall of the woman Ortiz and its result, and denied that should it have happened, it was due to his fault or negligence, but was, on the contrary, due to the fault and carelessness of the woman Ortiz.

He denied having been aware of the poor condition of the steps and further alleged that he had never been notified of any defect thereof.

As special defense he pleaded that the plaintiff "is without legal capacity to sue in behalf of the conjugal partnership because it does not appear from the face of the

complaint that at the time of the accident as described in paragraph 3 of the complaint he was married to María Luisa Ortiz; that the complaint does not state facts sufficient at law entitling the plaintiff to bring the present action.''

The trial lasted two days and a view made took another day.

The trial court weighed the evidence introduced by both sides and delivered an opinion in which it said:

''The house at 37 General Contreras street of this city is partitioned into three tenements, all of which face the said street. At the back of the house there is a small yard with concrete floor reached from the tenement in the centre and from that on the right facing the building. There are in the yard some wooden steps leading to the roof of a small structure built of reinforced concrete or stone, not so high as the rest of the house. On this first roof there are other steps leading to the real main roof.

''The house belongs at present and did belong on July 16 of last year to defendant Ramón Fernández who, in turn, bought it from Cruz Rivera Meléndez, its former owner. The plaintiff and his family came to live as tenants in the tenement in the center while the house belonged to Rivera and when Fernández bought it they went on living there also as tenants.

''Ever since the house belonged to Rivera the wooden steps already mentioned were there and Fernández, on buying the house, left them where they were.

''On July 16 of last year plaintiff's wife decided to climb on the roof to dry some bathing suits of her children. While standing with one foot on the third step and lifting the other to step on the fourth, a piece on the outer edge of the third step gave away causing the woman to fall down. As the result of the fall on the cement floor, she suffered a comminuted fracture of the left femur immediately below the trochanters, with displacement of the fragments, severe bruises on the left arm and several others on different parts of the body.

Then, from the view taken, it describes the steps as follows:

''. . . . has eight steps. They are built on the concrete floor of the yard and the top one rests on the edge of the parapet of

the roof, without being made fast to it. On the right side of the steps there is a railing made out of a batten one inch thick by three inches wide, between two wooden posts one of which rests on the lower step and another similar one on the parapet of the roof. This railing bends easily and has not the necessary rigidity owing to its length between the two posts and to the thickness of the batten. The steps are so steep and so narrow that one can not climb down turning one's back to the steps but facing them, as in the case of a ladder. The steps have been so deficiently built that it requires extreme care when placing one's foot on them, because, being so narrow, one runs the risk of standing on tiptoe and falling. On the outer edge of the third step and midway between the ends there is missing a strip of wood seven inches long by one inch wide. We were able to notice signs of the left end of the missing wood having been cut with a sharp instrument; but this fact does not throw any light on the case because, although the plaintiff went on living in the tenement for some time after the accident, it is likewise a fact that he vacated afterwards the tenement which thus came again into the possession of the defendant, and we can not ascertain whether said cut was made prior or subsequent to the accident nor who made it. This third step is somewhat decayed underneath towards the outer edge, but by making a cut lengthwise in the step in controversy, we were able to ascertain that although the lower part was decayed the upper one was not. The lowest step is in good condition and the steps, including the third one, do not impress one as being rotten, and actually they are not, except the lower part of the edge of said step.''

■ It then disposes of the special defense pleaded in the answer and dismisses it because, in its judgment, the complaint states facts sufficient and the plaintiff is entitled to sue as the representative of the conjugal partnership for the recovery of damages suffered by it as the result of the accident of which his wife was the victim—conformable to the jurisprudence laid down by this court several times in this respect—and goes fully into a consideration of the facts and the law, as follows:

''The action is prosecuted by the plaintiff under sections 1444 and 1446 of the Civil Code (1930 ed.) which in their pertinent parts provide as follows:

" 'Section 1444.—The lessor is obliged:

" '1.—    .        .        .        .        .        .        .

" '2.—To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined.

" '3.—    .        .        .        .        .        .        .

" '.Section 1446.—If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force.'

"That the injured woman fell from the steps and thus had her femur fractured is a fact beyond all controversy. The parties only differ as to the immediate cause of the fall, for, whereas the injured woman advances as the cause of the accident the breaking of the step and the dangerous condition thereof, the defendant attributes the same to her having slipped by negligently placing her foot on the step.

"There is no evidence in support of the contention of the defendant. On the other hand, the testimony of the injured woman, the defect on the edge of the step, as appears from the photos, and from the plate submited and of the view taken, support the version of the injured woman, which we accept as true because the same has not been controverted nor is there any ground or reason for rejecting it.

"Now, does it appear from the evidence that the lessor had knowledge of the decayed condition of the steps and therefore that the the same needed repairs? Such allegation of the complaint is not sustained by the evidence."

The court considers the testimonies of the injured woman and of the defendant, transcribing part of them, and then adds in conclusion:

"When on April 19 last we had an opportunity to examine the steps on the occasion of the view taken by us, we were able to notice that it did not show any signs of being in a decaying or ruinous condition. If this was the situation last month, it is obvious that on the day of the accident suffered by the woman Torres, which occurred on or about July 16, 1937, it could not look like needing repairs either and obviously when the girl fell some months prior to July 16, 1937, it was much less probable that the woman Torres could even suspect that the steps needed repairs. Moreover, if the

defendant at the request of the injured woman made rather large repairs, such as changing the floors, etc., it would have been rather easy for him to change one or more steps if requested and if such repairs had been actually needed. These considerations, apart from the conflicting statements, evasions and hesitations on the part of the injured party when testifying regarding this particular, compel us to resolve the conflict in the evidence in favor of the defendant, giving credit to his testimony and to that of Carmona regarding this point."

Having thus settled the conflict in the evidence, the court considers the liability that might attach to the defendant by reason of the defective construction of the steps and exonerates him from blame, as follows:

". . . . the steps were there with their defective construction not only when the plaintiff rented the tenement from Rivera, former owner, but when renewing the contract with defendant Fernández, and that being so, the latter is not liable for such defects in construction which were known to the tenant when he entered into the contract and although such defects were known to him, he accepted the tenement in such state. In this respect and commenting section 1554 of the Spanish Civil Code, equivalent to section 1444 of our Code (1930 ed.), Manresa says:

" 'The lessee of an estate as well as the purchaser thereof must consider whether or not it suits him, and once the same is seen and the parties come to an agreement, the lessor fulfil his part of the deal by delivering the estate in the condition it was when perfecting the contract. . . .' 10 Manresa, Spanish Civil Code (2d ed.) 515."

And further:

"It is, therefore, evident that the defendant is not responsible for the defects of construction of the steps. Let us see whether or not he is responsible because of his failure to repair the step.

"We have previously concluded that the defendant had not been told or notified that the steps needed repairs and therefore that the bad condition of the latter was unknown to him. Upon that premise, we will determine whether or not he is responsible for the accident suffered by the injured woman. The plaintiff maintains that the lessor is responsible for any accident due to the lack of necessary repairs, even though his attention has not been called about the

matter, and cites in this connection cases decided in different juris-dictions in the United States, including Louisiana, and the decision in *Roa* v. *Puig et al.*, 19 P.R.R. 366.

"As the statute controlling here is our Code of Civil Procedure, we must resort to this source rather to any other in order to determine whether in effect the defendant is responsible for the accident, he not having been notified to make repairs. As above stated, section 1444 of the Civil Code (1930 ed.) imposes on the lessor the obligation to make upon the thing leased, during the lease, all the necessary repairs in order to preserve the same fit for the use to which it has been applied. But this obligation on the part of the lessor is supplemented by the similar obligation on the part of the lessee contained in section 1449 of the same statute which, when referring to the obligations of the lessee, says:

" 'He is also obliged to give notice with the same urgency to the owner of the necessity of all the repairs included in number 2 of section 1444.'

"So that section 1449 expressly imposes upon the lessee the duty to notify the lessor of the necessity of the repairs. It is true that in *Roa* v. *Puig et al.*, *supra*, it is maintained as *dictum* that the owner can not allege that he was not notified by the tenant of the state of repairs of the thing leased, because no such notice is required by law; but, as clearly appears from section 1449 in connection with section 1444 of the Civil Code, such *dictum* is erroneous and in conflict with the provisions of the Code. . . ."

It is urged that both Manresa and the "Enciclopedia Jurídica Española" are quite silent on this particular, and citation is made from 24 Scaevola, Civil Code, 516, and from 9 Martínez Ruiz, Civil Code, 565 *et seq.*, of some paragraphs which, in the opinion of the court, support its views, and it is further stated:

"In the case of *Roa* v. *Puig et al.*, *supra*, notice to the owner or lessor was unnecessary, because it appears from the same that one year prior to the fall of the beam which caused the accident, another beam had fallen and this fact was known to the lessor. Of course, in such circumstances the lessor had been sufficiently notified and there was no need for the lessee to tell him what he already knew.

"In *Miranda* v. *Méndez*, 50 P.R.R. 810, where the responsibility of the lessor was involved by reason of damages suffered by the

lessee owing to the failure to make the necessary repairs, it was fully shown that the plaintiff had notified the agent or manager of the lessor about the bad state of repairs of the stair which caused the accident. In this connection it is stated on p. 855 of the opinion:

" 'The stairway was in a bad state of repair, the plaintiff notified the defendant, and the defendant promised to repair it and was dilatory in doing so.' . . . .

"Both the case of *Roa* v. *Puig et al.* and that of *Miranda* v. *Méndez, supra,* are quite distinguishable from the case at bar. In the former the lessor was aware of the deterioration because of the accident which occurred prior to the one that gave rise to the suit; and in the latter the lessor had been expressly notified by the lessee and had promised to make the repairs and had delayed them and thus gave occasion for the accident to happen.

"Although in the Louisiana case entitled *Estes* v. *Aetna Casualty & S. Co.,* 157 So. 395, the liability of the lessor is upheld owing to lack of repairs even though he was not notified of the need thereof, such liability rests on section 2695 of the Civil Code of said State, which reads as follows:

" 'The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.'

"The same rule controls in France, based on section 1721 of the French Civil Code, substantially similar to section 2695 of the Louisiana statute. But as we have seen, such provision does not exist in Puerto Rico. . . ."

The appellant assigns in his brief two errors which he claims were committed by the trial court in dismissing the complaint on the only ground that there was no evidence in support of the contention that the lessor already knew of the bad state of repairs of the steps, and also, as claimed by him, in holding that it devolved upon the plaintiff to notify the defendant of the bad state of repairs of the steps for his liability to arise in connection therewith.

As regards the first error, it will suffice to say that although from a consideration of the evidence we have found

statements in the testimony of several witnesses that might lead us to the conclusion that the defendant knew of the actual condition of the steps, they are not in our opinion sufficient for substituting our judgment for that of the trial judge.

■■ A consideration of the second error assigned involves that of the fundamental issue to be determined in this appeal relying on the pleadings, the evidence and the facts as declared by the trial judge to have been proven.

Such issue can be stated as follows: Is it incumbent upon the defendant as the owner of the house in question herein, who partitioned the same into tenements and let them to several people—one of whom is the plaintiff herein—and who kept in the yard, in the open, some wooden steps used by the tenants for climbing on to a roof for hanging clothes and for other purposes; is it incumbent upon him, we say again, to preserve said steps in a condition of safety, and in case of failure to do so is he liable in damages to one of his tenants—plaintiff's wife—who was injured by falling from the steps due to the decayed condition of the lower outer edge of one of the steps even though the tenant had failed to notify him or he did not actually have knowledge of said state of repairs?

If we had in our statutes in Puerto Rico a legal provision similar to that of Louisiana, transcribed in its opinion by the district court, there would be no question. The issue would have been settled already in the affirmative by the legislator himself.

However, although our Civil Code does not contain such express legal precept as that of Louisiana, said Code contains, besides, the sections relating to the mutual obligations of lessor and lessee in the contract of lease, cited and applied by the district court, another provision whose wide scope covers the juridical relation arising from the facts herein. We mean section 1802 wherein it is prescribed: "A person who by an act or omission causes damage to another when

there is fault or negligence shall be obliged to repair the damage so done." Civil Code of Puerto Rico, (1930 ed.), p. 373.

Bearing undoubtedly in mind such precept this court, in *Roa* v. *Puig et al., supra,* said:

"The first assignment refers to the finding made by the trial court as to the negligence of the appellant in not making the necessary repairs to the house occupied by the respondent, so as to prevent the falling of the beam therein, which occurred on April 14, 1911. The record plainly shows that the necessary repairs had not been made, and sufficiently indicates that it was on this account that the beam became loosened, probably by the usual rains, and thereby fell from its place in the wall. The statute, section 398 of the Civil Code, excuses the owner from liability for such accidents in cases of *vis major*, but we cannot consider this as falling under that exception. If this accident had been caused by an earthquate or a stroke of lightning, or other such unusual natural phenomenon, the appellant would have been excused from liability; but for the usual results attending the tropical weather, to which we are subject in this climate, no exception is made and the liability of the owner of the property results. Nor can it be alleged by the owner that she was not notified by the tenant of the condition of the house. Such notice is not required by the law and in this case the bad condition of the beams was not perceptible to the eye of the ordinary observer. The agent of the owner, considering the accident which took place in September of the previous year, should have been on the alert and have given the necessary instruction in due time so that the proper examination as to the conditions of the beams of the ceiling could have been made, in order to provide for all the repairs required by the circumstances, thus protecting his principal from any charge of fault or negligence. Therefore, we must arrive at the conclusion that the first assignment of error which has been presented by the appellant is not well founded."

It was by the express application of such precept that this court, several years afterwards in *Pérez* v. *Gandía,* 32 P.R.R. 517, 519, held as follows:

"In discussing the first assignment the appellant maintains that the complaint does not allege the existence of any valid contract between the plaintiff and the defendant, and that in case the existence

of a lease contract could be inferred, the payment of the rent is not alleged, nor that the lessee notified the lessor that it was necessary to repair the leased house.

"We think that the assignment is without merit. The liability of the defendant towards the plaintiff does no spring from any contract entered into directly with her. The complaint alleges the existence of a lease contract between the defendant, the owner of the house, and Conrado Rosario. The allegation that the plaintiff 'was and is living in concubinage' with Rosario was unnecessary. Rosario had a right to receive guests in the house which he rented as a dwelling. Any person could enter it in the ordinary course of business and to all of them the owner was responsible. It was the duty of the owner to keep the house in a habitable condition and if with knowledge of its unsafe condition he negligently failed to repair the defects, he is liable for the damages that may have been caused thereby. His liability arises from the quasi-contract referred to in section 1803 of the Civil Code, as follows: 'A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.'

"The foregoing is sufficient for the conclusion that allegations of payment of rent and of notice by the lessee to the lessor of the existing defects were not necessary. Knowledge of the defects by the lessor by reason of the notice given to him by the health authorities was duly alleged, as was also his negligence in failing to repair the house."

We have not been convinced that the theory of this court is erroneous and that we should rectify the same in the sense that this case should be governed exclusively by the provisions of the Civil Code relative to leases and that no application should be made to the same of the provisions relating to actions arising from fault or negligence. On the contrary, a fuller consideration thereof leads us to a ratification of our opinion.

"Obligation imposed on owner of building, under Civ. Code, art. 2322, to answer in damages to person injured by neglect of owner to keep building in repair, arises *ex delicto*," as held in *Klein* v. *Young et ux.*, 111 So. 495; and in *Schoppel* v. *Daly*, 36 So. 322, it was held: "The existence of contractual relations between two parties is not bar to a right of

action for tort committed pending the contract, and connected with it, though the contract may more or less affect the rights and obligations of the parties.''

■ Moreover, the peculiar circumstances of the present case, such as they appear from the complaint, from the answer, from the evidence and from the facts found to have been shown by the trial court, show that the plaintiff did not have the exclusive possession of the steps but merely the right to their use in common with the tenants of another tenement, the possession and control thereof being in the owner, and it has been held by continental courts in similar cases as follows: -

''The liability of a landlord for personal injuries to tenants and persons in privity with them, due to the defective condition of approaches, halls, stairways, etc., that remain under his control, is based on the duty, imposed upon him by reason of his possession and control, to use ordinary care to keep in a reasonably safe condition those portions of the building, and the breach of this duty, which, of course, constitutes negligence on his part.'' 25 A.L.R. 1292.

''The second question is whether the stairway here in question is taken out of that rule by the fact that it was to be used by two tenants in common in place of a great number of tenants; and we are of opinion that it was not. The rule being founded on practical considerations should not be limited by nice distinctions. In our opinion it should apply in case of common stairways used by a few as well as in case of those used by many.'' *Flanagan* v. *Welch*, 107 N. E. 979.

The rule is set out in Restatement of the Law of Torts, Vol. II, p. 976, treating of Negligence, as follows:

''A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.'' Section 360.

According to the decisions it has been expressly held that it is not necessary to show that the owner actually knew of the defect. *Gill* v. *Middleton*, 105 Mass. 477; *Watkins* v. *Goodall*, 138 Mass. 533; *Readman* v. *Conway*, 126 Mass. 374; *Looney* v. *McLean*, 129 Mass. 33; *Lindsey* v. *Leighton*, 22 N.E. 901.

If by taking the necessary care incumbent upon him the defect could have been detected and he failed to take such necessary care, the owner is responsible.

In the instant case indeed, as there were involved some wooden steps built long ago,—they were already in the yard when the defendant bought the house—exposed to the destructive action of the elements, specially water, it was the clear duty of the defendant to examine them or have them examined within reasonable periods of time, in order to ascertain if the same were in a safe condition for their use.

If he had done his duty, he would necessarily have discovered the defect, and, such being the case, constructive knowledge thereof may be imputed to him. Having knowledge of the same he failed to repair them. His negligence is evident and the responsibility arising therefrom unavoidable.

". . . . The common experience of mankind teaches us that the deterioration of the wood must have extended over a very considerable period of time; and, in view of the fact that the decay was most noticeable on the upper or exposed part of the banister, and that the condition of the same was such that, when pressure was applied against it, the wood pulled away from the nails and crumbled into several pieces, it would clearly appear that the jury, as reasonable men, might properly have found that an ordinary careful inspection would have revealed the defect in the banister in ample time for repairs to have been made before the occasion of plaintiff's injury. Consquently, we have no hesitation in holding that the evidence was entirely sufficient to impute timely, constructive knowledge of the weakened condition of the banister to defendant, so as to give rise to the implication of negligence on her part in having failed to repair or replace the same." *Bleisch* v. *Helfrich*, 6 S.W. (2d) 978, 979.

By reasons of the foregoing, we must conclude that the error assigned was well founded, and as it was not necessary for the tenant to notify the owner or to show that the owner actually knew of the defect in order to claim compensation from his because of the accident occurred on account thereof, the complaint ought to have been sustained. It was not so sustained and the judgment rendered must be reversed.

It is provided by law that where this court reverses a judgment, it shall, as a general rule, render the judgment that should have been entered by the district court, and the appellant accordingly moved this court to order the defendant to pay to him any amount that it should consider adequate in accordance with the evidence heard regarding damages, as compensation for the personal injuries suffered by his wife, with costs on the defendant including a reasonable amount as attorney's fees.

We know that the plaintiff prayed for $12,800. The amount at first seems excessive. "As the result of the fall on the cement floor, she suffered a comminuted fracture of the left femur immediately below the trochanters, with displacement of the fragments, severe bruises on the left arm and several others on different parts of the body."

Without stopping to make a detailed statement, taking into consideration the attendant circumstances and being guided by similar cases, we consider $2,000 as reasonable compensation. The work of the attorney for the appellant was intense and reveals a careful and painstaking study of the facts and of the law. We think that the sum of $500 should be allowed as attorney's fees.

Judgment must be entered accordingly.

Mr. Justice De Jesús took no part in the decision of this case.