ROBERT BACON *vs.* GEORGE L. JAQUES.

Worcester.  September 22, 1942. — October 31, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Landlord and Tenant*, Common passageway, Landlord's duty to tenant
or his family or his invitee.

An invitee of a tenant could not recover from the landlord for injuries
sustained from slipping on oil on a common passageway in the landlord's control where the evidence did not show by whose act the oil
came there or that the landlord had any special duty to keep the
passageway free from foreign substances.

TORT. Writ in the Superior Court dated January 22,
1940.

The action was tried before *Pinanski*, J.

*C. W. Proctor*, for the defendant.

*J. J. Moynihan*, for the plaintiff, submitted a brief.

DOLAN, J. This is an action of tort to recover compensation for personal injuries alleged to have been sustained
by the plaintiff while delivering oil to a tenant of the defendant Jaques on premises in the control of Jaques. The
action was discontinued as to a defendant corporation with
its consent and that of the defendant Jaques, hereinafter
referred to as the defendant. At the close of the evidence
the defendant moved for a directed verdict in his favor.
The motion was denied and he duly excepted. The jury
returned a verdict for the plaintiff in the amount of $4,900.
The defendant filed a motion for a new trial. The judge
ordered the plaintiff to remit $1,000 of the verdict or, in

the alternative, that a new trial be had on the question of damages only. The plaintiff did so remit, and the case comes before us on the defendant's exception to the denial of his motion for a directed verdict.

On the evidence the jury would have been warranted in finding the following facts: The plaintiff was engaged in the oil business on his own account, and regularly delivered oil to one Pehl, who operated a bakery on premises leased by him from the defendant. Pehl's tenancy began "about three fourths of a year" before the accident occurred on October 27, 1939. The plaintiff had been delivering range oil regularly for use in the tenant's bakery since August 1, 1939. He "was the only one who delivered oil to this place after that time," and he made all the deliveries personally. The deliveries were made into a storage tank attached to the rear wall of the premises occupied by the tenant which abutted on a common passageway in the control of the defendant. The tank was attached to the wall at some height from the ground, and rested upon iron supports affixed to the concrete floor of the passageway. The deliveries were made by means of a hose from the plaintiff's truck. In order to make the deliveries it was necessary for him to back his truck into the passageway to a point about fifteen feet from the nearest side of the tank. Having done so he turned on the pump, drew out the hose, climbed up on a wall at the rear of the passageway and adjacent to the tank, "put the hose in" and then "let himself down" from the wall. He walked back toward his truck, and when ten or twelve feet from the tank, slipping on a coating of oil on the passageway, he fell and was injured. The day upon which the accident occurred was very misty and wet. The plaintiff then noticed and a week before had observed that the condition of the concrete in the rear of the passageway was "oily." After backing up his truck "and . . . going around in back to get the hose . . . he noticed how slippery it was." It was coated with oil over an area twelve feet square. He knew where the coating of oil was, but in order to make deliveries it was necessary for him to walk through it. He thought he could do so safely. He testified

that oil on the passageway could not have come from the hose he was using, because he was delivering range oil, and range oil "dries up within half an hour." After he fell he did not examine the oil on the passageway and no analysis was made of it thereafter. There was no evidence that oil of any nature was delivered at any time through the common passageway to others than the tenant Pehl. Pehl testified that he "never thought there was any oil there although there must have been some. There were oil spots there but not a lot of oil."

It is settled that a landlord owes to the members of a tenant's family, and to his guests and invitees the same duty that he owes to the tenant, and that his only duty to the tenant with respect to common passageways and other premises remaining in his, the landlord's, control is to use due care to keep such parts of the premises in the same condition as they were or appeared to be in at the time of the letting. *Watkins* v. *Goodall*, 138 Mass. 533, 536. *Caruso* v. *Lebowich*, 251 Mass. 477. *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203, 205. *Chambers* v. *Durling*, 306 Mass. 327, 329. *Shwartz* v. *Feinberg*, 306 Mass. 331, 333, 334. *Richmond* v. *Warren Institution for Savings*, 307 Mass. 483, 486. The landlord, however, owes no duty to the tenant or one acting in his right to remove foreign substances from common passageways, whether placed there before or after the letting, unless thereafter he or one for whose acts he is responsible placed the obstruction there. The duty owed by him to those "who used the passageway under the contract of letting, and to all persons having occasion to use it in connection with the tenements let [is] not wantonly or negligently to place a dangerous obstruction upon it. . . . He is liable for obstructions negligently caused by him, but not for not removing obstructions arising from natural causes, or the acts of other persons, and not constituting a defect in the passageway itself. He would be liable for negligently leaving a coal scuttle in a dangerous position, but not for not removing one so placed by another person." *Watkins* v. *Goodall*, 138 Mass. 533, 536. *Caruso* v. *Lebowich*, 251 Mass. 477, 479. *Palladino*

v. *De Stefano,* 258 Mass. 12, 13. *Prushensky* v. *Pucilowski,* 269 Mass. 477, 480. *Martin* v. *Rich,* 288 Mass. 437, 439. *Richmond* v. *Warren Institution for Savings,* 307 Mass. 483, 486. The landlord's duty under discussion is analogous to that which he owes to travellers on the highway. *Watkins* v. *Goodall,* 138 Mass. 533, 536. With respect to that duty see *Farolato* v. *Springfield Five Cents Savings Bank,* 310 Mass. 806, 808, 809, and cases cited.

In the instant case, even if it be assumed in favor of the plaintiff that the jury could have found properly that there was no oil on the passageway at the time of the letting to the tenant Pehl, nevertheless, in order to recover, the plaintiff was bound to prove that the foreign substance, the oil, the presence of which the jury could have found was the cause of his injuries, was negligently placed there by the defendant or his agents or servants. We are of opinion, however, that the record discloses no evidence that would enable the jury to determine by whose act the oil came to be upon the passageway. The determination of that question could not be left to mere surmise or conjecture. There is no evidence of any assumed or contractual duty on the part of the defendant to keep the passageway "free from obstruction or filth." *Caruso* v. *Lebowich,* 251 Mass. 477, 479.

The defendant's motion for a directed verdict should have been granted.

*Exceptions sustained.*

*Judgment for the defendant.*