WILLIAM J. MORGAN *vs.* THE MERCHANTS NATIONAL BANK OF BOSTON & another, executors.

Suffolk. April 8, 1942. — October 28, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

*Landlord and Tenant,* Common stairway, Landlord's liability to tenant or his family or his invitee. *Negligence,* One owning or controlling real estate.

Evidence warranted a finding that injuries, sustained when a tenant fell on a common stairway in the landlord's control, were due to negligence of the landlord's employee in causing the steps to be dangerously wet and slippery when sweeping them.

TORT. Writ in the Superior Court dated October 6, 1939.

At a trial before *Hanify,* J., there was a verdict for the plaintiff. The defendants alleged exceptions.

In this court the case was argued at the bar in April, 1942, before *Field,* C.J., *Donahue, Dolan, Cox, & Ronan,* JJ., and afterwards was submitted on briefs to all the Justices.

*D. H. Fulton,* for the defendants.

*Joseph Wentworth* for the plaintiff.

LUMMUS, J. This is an action of tort for personal injuries, brought by the tenant at will of a part of the fourth

floor of a "loft" building at 38 Chardon Street in Boston against the executors of the will of Elizabeth A. Lufkin, who was the landlord at the time of the alleged injury on October 25, 1937. The plaintiff's tenancy began in the latter part of 1935. The injury happened on a common stairway in the control of the defendants' testatrix. The first count alleged that "the stairs were permitted to remain in a defective condition and covered with undried soap and water." The second count alleged that "the lighting in the stairway was permitted to become insufficient and the stairs were permitted to become unsafe and treacherous."

The plaintiff described the building as a "rough" one. The stairs were worn when the tenancy began, but "twice as bad" at the time of the accident. "The stairs were bad" at the beginning of the tenancy and "they were continually getting worse." They became worse the longer he remained there before the accident. The treads, which were worn when the tenancy began, wore down another inch during the tenancy. There was evidence that when the tenancy began the building "was a very old building and had taken a lot of abuse and the treads of the stairs were badly worn" and "had never been repaired previous to the accident from the time we [the plaintiff] moved in." A tenant or licensee on the fifth floor dealt in show cases, and carried them up and down the stairs after hours when the elevator was not running. "They didn't carry things, they skidded them up the stairs," sliding them along. The stairs were made of a wood that was easy to chip off. "Whole chunks" of the treads were knocked out by sliding things on them. Chips were knocked out that would go half way through the thickness of the treads. The front edges of the treads became much worn down and curved. The treads were worn into a hollow or depression, that would hold water, and the treads in general came to have a pitch towards the edge, for "the tread came down to nothing on the front."

When the plaintiff became a tenant, one Bondi, an employee of the landlord, had charge of the building. The plaintiff told him more than once before the accident that the stairs were in bad shape. Nothing was done about it.

Bondi swept the stairs, and used a watering pot to wet them before sweeping, as the plaintiff knew. There was no shellac or paint on the stairs.

Just before the accident, Bondi had wet the stairs previous to sweeping, and they were very wet at the time of the accident. Wetting the stairs made them slippery. The plaintiff did not see or know that the stairs were wet when he started down. He slipped on the third step (counting the fourth floor as the first step), which was one of the worst worn steps, fell, and hurt himself. That step had a piece broken out of its edge. That step was dangerously wet. The water was in puddles in places, but he could not say whether there was a puddle on that step. There were spots of water, drops of water, on that step, and they were quite extensive, and made the step slippery. The plaintiff never complained of the stairs being wet before the accident.

When the tenancy began, there was a light bulb at the head of the stairs, giving a light that was not "so bad." At the time of the accident the bulb was "half-burned out" and gave only a very dim light. The lighting "has always been bad and sometimes worse" at times than at other times.

A photograph of the steps in question, taken on April 9, 1940, was admitted in evidence, with testimony of the plaintiff that the photograph shows greater wearing of the steps than existed on the day of the accident. He said that the photograph shows only "a little more advanced state of wear." The photograph shows the same treads and risers that were there at the time of the accident, he said.

Upon substantially the foregoing evidence, the judge denied the motion of the defendants for a directed verdict in their favor, subject to their exception, and submitted the case to the jury, who returned a verdict for the plaintiff. The only question is whether there was a case for the jury.

We need not consider whether there was any evidence of an implied contract to light the stairway (*Polansky* v. *Heller*, 241 Mass. 484; *Carey* v. *Klein*, 259 Mass. 90; *Heilbronner* v. *Scahill*, 303 Mass. 336, 337), or of a causal rela-

tion between any want of light and the injury. Neither need we consider whether there was evidence that any deterioration of the stairs occurring after the tenancy began bore a causal relation to the injury. There was evidence that the defendants' testatrix was negligent in causing the stairs, in the condition in which they were at the time of the injury, to become dangerously wet, and that such negligence caused the injury. *Watkins* v. *Goodall,* 138 Mass. 533, 537. *Judson* v. *American Railway Express Co.* 242 Mass. 269. *Topjian* v. *Boston Casing Co. Inc.* 288 Mass. 167.

*Exceptions overruled.*