Curran, Dennis J., J.
It is not reasonable for a property owner to leave snow or ice on a walkway where it is reasonable to expect that a hardy New England visitor would choose to risk crossing the snow or ice rather than turn back or attempt an equally or more perilous walk around it.
Papadopoulos v. Target Corp., 457 Mass. 368, 379 (2010).
The plaintiff, John Santolucito, was injured in a slip and fall incident in a parking lot owned by DeMoulas Super Markets, Inc. This matter is presently before the Court on DeMoulas Super Markets, Inc.’s motion for summary judgment. Santolucito claims that the defendants, DeMoulas Super Markets, Inc. and Zanni Sons, Inc., the hired snow removal contractor, negligently maintained the parkmg lot and allowed and/or created unsafe conditions that led to his injury. DeMoulas Super Markets, Inc. has moved for summary judgment contending that it did not breach its duty of care to Mr. Santolucito and was not otherwise negligent. For the following reasons, DeMoulas Super Markets, Inc.’s motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The undisputed facts, as revealed by the summary judgment record, are as follows.
On February 21, 2005, John Santolucito was injured when he slipped and fell in the parking lot of a Market Basket located in Middleton, Massachusetts.[2] The accident occurred during a snowstorm[3] and the area of the parking lot where Mr. Santolucito fell was covered in a layer of “black ice,” which was then covered by a thin layer of freshly fallen snow.
On the day of the accident, the snow began to fall around 3:00 am. A total of six inches of snow fell that day. The snow removal contractor, Domenick Zanni Sons, Inc., began plowing the parking lot around 4:00 a.m. Market Basket opened at 7:00 a.m. and Mr. Santolucito arrived at the store between 7:30 and 8:00 a.m. to purchase some groceries. Approximately three inches of snow had fallen by that time and Zanni Sons, Inc. had cleared the parking lot numerous times.
Mr. Santolucito parked in the lot and entered the store without incident. He did not speak with any employees about the conditions outside, nor did he complain about the snow removal efforts in the parking lot. He spent approximately fifteen minutes shopping and then left the store through the same door and headed for his car. He was carrying two bags of groceries, wearing sneakers, and, admittedly, walking kind of fast when he slipped. At the time he fell, he was walking next to another shopper whom he warned to be careful because the lot was slippery. He was looking straight-ahead while he walked. While in the parking lot and walking towards his car, Mr. Santolucito slipped on “black ice” and suffered serious physical injuries.
The ice that Mr. Santolucito slipped on was a patch of black ice approximately six feet by six feet that was covered by a light dusting of snow. The snow that covered the ice was light and fluffy; it had no dirt, debris, prints, ruts, or indentations in it. Zanni Sons, Inc. had not applied any sand or salt to the lot before Mr. Santolucito’s fall. Zanni Sons, Inc. was not permitted to sand or salt the lot unless expressly told to do so by DeMoulas Super Markets, Inc. At some point later that day, probably around noon, DeMoulas Super Markets, Inc. instructed Zanni Sons, Inc. to sand the lot. They did so.
Zanni Sons, Inc. used two pickup trucks with steel, snowplow blades mounted on them to clear the snow from the parking lot. They also employed two front-end loaders to move the snow into large piles. The steel blades on the plows may have become hot as they ran along the ground and this could have caused some of the snow to melt and ice to form if the melted snow *373 refroze.[4] Zanni Sons, Inc. spent a total of twelve hours clearing snow from the parking lot on February 21, 2005 and spent another four hours the following day completing the clean up.
Mr. Santolucito has alleged that DeMoulas Super Markets, Inc. and Zanni Sons, Inc. were negligent because they: 1) caused or allowed a dangerous accumulation of ice to occur; 2) failed to remove the accumulation; 3) failed to treat the accumulation with sand or salt; arid 4) negligently failed to keep the area safe. Additionally, the plaintiffs now-deceased wife, Claire Santolucito, has brought claims for loss of consortium and pain and suffering based upon her husband’s injuries and subsequent debilitation. Both defendants have also filed cross claims for contribution and indemnification against one another.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). For issues that the moving party does not have the burden of proof at trial, the absence of a triable issue may be shown by the submission of affirmative evidence that negates an essential element of the opposition’s case, or materials showing “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts that would establish the existence of a genuine issue of material fact. Id. Parties may not rely on bare assertions and conclusions to create a dispute necessary to defeat summary judgment. Benson v. Massachusetts Gen. Hosp., 49 Mass.App.Ct. 530, 532 (2000), quoting Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993). The court views the evidence in the light most favorable to the non-moving party, but does not weigh the evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
A. Negligence Claim
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991) (citations omitted). In most cases, the question of negligence is a question of fact for the jury. Mullins v. Pine Manor Coll., 389 Mass. 47, 56 (1983). Only when no rational view of the evidence permits a finding of negligence will the trial judge decide the issue as a matter of law and grant summary judgment. Id., citing Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973), quoting Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203-04 (1964), and Beaver v. Costin, 352 Mass. 624, 626 (1967).
This case is controlled by Papadopoulos, in which the Supreme Judicial Court abolished the “natural accumulation” doctrine and adopted a “reasonable care” standard for accidents involving slip and falls on snow and ice.[5] Papadopoulos, 457 Mass. at 383-84. In Papadopoulos, the Court declared that “the same obligation of reasonable care that a property owner owes to lawful visitors regarding all other hazards” will now be applied to hazards arising from snow and ice.[6] Id. at 369.
While Papadopoulos eliminated the “natural accumulation rule” and adopted the so-called “Connecticut Rule," the Court declined to adopt Connecticut’s “storm-in-progress” doctrine. The “storm-in-progress” doctrine was initially laid out in Kraus v. Newton, 211 Conn. 191, 197-98 (1989), in which the Supreme Court of Connecticut held that “in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps.” The Kraus Court added “(t]o require a landlord or other inviter to keep walks and steps clear of dangerous accumulation of ice, sleet or snow, or to spread sand or ashes while a storm continues is inexpedient and impractical.” Id. at 198.
Under the current Papadopoulos standard, “a fact finder will determine what snow and ice removal efforts are reasonable in light of the expense they impose on the landowner and the probability and seriousness of the foreseeable harm to others.”[7] Papadopoulos, 457 Mass. at 384, citing Mounsey v. Ellard, 363 Mass. 693, 709 (1973). “The snow removal reasonably expected of a property owner will depend on the amount of foot traffic to be anticipated on the property, the magnitude of the risk reasonably feared, and the burden and expense of snow and ice removal.” Papadopoulos, 457 Mass. at 384. Different types of property owners, i.e., single-family homes vs. large, commercial outfits, will have different standards as to what constitutes reasonable snow removal. Id.
Applying this background to the facts presently before the Court, summary judgment must be denied because, in light of Papadopoulos, the reasonableness of snow and ice removal efforts is reserved for the fact finder. Mr. Santolucito was a business invitee and legally on the property, therefore, DeMoulas Super Markets, Inc. owed him a duty of care. While DeMoulas Super Markets, Inc., through its snow removal contractor, Zanni Sons, Inc., sought to meet this duty by clearing the parking lot of snow, whether the manner in which it did so was reasonable cannot be deter *374 mined as a matter of law on the summary judgment record before the Court.
Despite DeMoulas Super Markets, Inc.’s contention that Zanni Sons, Inc. was an independent contractor, and therefore solely liable for any damages, a thin factual question exists here as to whether to apply sand or salt and DeMoulas Super Markets, Inc. did not delegate this decision to Zanni Sons, Inc. If a jury found that the decision to wait to apply sand or salt was negligent, then DeMoulas Super Markets, Inc. itself would be negligent and the question of vicarious liability would not even be reached. Therefore, the claims cannot be dismissed on the basis of an independent contractor theory.
DeMoulas Super Markets, Inc.’s motion is further undercut by the principle that “(i]f aperson voluntarily assumes a duly or undertakes to render services to another .. . that person may be liable for harm caused because of the negligent performance of his undertaking." Thorson v. Mandell, 402 Mass. 744, 748 (1988). Both Connecticut and Federal trial courts have found that summary judgment is inappropriate where snow removal efforts may have created or furthered the hazardous situation.[8] Here, Zanni Sons, Inc. cleared the lot using steel plow blades attached to pickup trucks.
Mr. Santolucito concedes that the parking lot was well cleared of snow and ice by the snow plow, but contends that the plow blades may have heated up and melted some of the snow that eventually refroze as black ice. This appears to be the slim reed upon which this case must proceed to a jury. Coupling this possibility with DeMoulas Super Markets, Inc.’s decision not to sand or salt until much later in the day, then, as constrained by Papadopoulos, a theoretic construct exists whereby a jury could reasonably determine that Zanni Sons, Inc. and/or DeMoulas Super Markets, Inc. actually caused the unsafe condition, not the snowfall.
For these reasons, DeMoulas Super Markets, Inc.’s motion for summary judgment on the negligence claim must be denied.
B. Remaining Claims
DeMoulas Super Markets, Inc. has also moved for summary judgment on the loss of consortium claim. “[A] claim for loss of consortium requires proof of a tortious act that caused the claimant’s spouse personal injury.” Sena v. Commonwealth, 417 Mass. 250, 264 (1994) (citations omitted). Because the plaintiffs underlying negligence claim survives, summary judgment must be denied as to the loss of consortium claim as well.
Additionally, DeMoulas Super Markets, Inc. requests summary judgment as to Zanni Sons, Inc.’s claims for indemnity and contribution. A right to indemnification can be express, implied, or based upon a common-law right. Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37-40 (1983), and cases cited therein. Both DeMoulas Super Markets, Inc. and Zanni Sons, Inc. concede that there is no express indemnity provision in the parties’ contract.
There is “an implied right to contractual indemnity only when there are ‘special factors’ surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation." Fall River Hous. Auth. v. H.V. Collins Co., 414 Mass. 10, 14 (1992). This Court previously granted summary judgment in Zanni Sons, Inc.’s favor as to DeMoulas Super Markets, Inc.’s cross claim for indemnity and dismissed that claim. In that motion, Zanni Sons, Inc. argued “[i]n the case at bar, the parties did not have a special relationship or unique special features that would create implied indemnification.” Zanni Sons, Inc. now argues that there is indeed a special relationship but, inevitably, to no avail.
Common-law “(i]ndemnity . . . allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorneys fees.” Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). In a negligence claim predicated on negligent snow removal, the snow removal contractor cannot claim that it is entirely without fault. After all, it is that entity’s actions that form the basis of the suit. Therefore, common-law indemnification will not apply to the present case and Zanni Sons, Inc.’s cross claim for indemnification must be dismissed.
Summary judgment as to Zanni Sons, Inc.’s claim for contribution pursuant to G.L.c. 23 IB, §1 is denied because the underlying tort claim has survived. See McGrath v. Stanley, 397 Mass. 775, 780-82 (1986) (“The contribution statute is aimed at eliminating the unfairness of allowing a disproportionate share of a plaintiffs recovery to be borne by one of several joint tortfeasors. The object to be accomplished is a more equitable distribution of that burden among those liable in tort for the same injury . . . An action for contribution is not barred if, at the time the tortious activity occurred, the party from whom contribution is sought could have been held liable in tort”).
CONCLUSION
Whether the snow removal efforts were reasonable is a question for the fact finder. This Court cannot rule as a matter of law on the negligence claim. Zanni Sons, Inc.’s claim for indemnification is dismissed because there is no express or implied right to indemnification in the contract and a common-law right does not apply in this situation. Summary judgment as to the remaining claims is denied because the underlying negligence claim has survived.
ORDER
For the foregoing reasons, DeMoulas Super Markets, Inc.’s motion for summary judgment is AL *375 LOWED as to Zanni Sons, Inc.’s cross claim for indemnification and DENIED as to the remaining claims.

 DeMoulas Super Markets, Inc. owns and operates the Market Basket and also owns the parking lot where the incident took place.

 Mr. Santolucito’s deposition shows that he does not remember it snowing during the time of the incident but the meteorological records show that it snowed both before and after the time period of the fall so the Court can definitively find that the storm was ongoing.

 The temperature around the time of the accident was approximately 25 degrees F.

 While Mr. Santolucito’s fall occurred in 2005 and Papadopoulos was decided in 2010, the Supreme Judicial Court held that its ruling was to be given retroactive effect. Papadopoulos, 457 Mass. at 384-85.

 The plaintiff in Papadopoulos was injured when he slipped and fell on a piece of ice that had frozen to the pavement. Id. at 370. It was not snowing or raining at the time the plaintiff fell. Id. at 369. The ice that caused the plaintiffs fall either fell from a nearby snow pile and refroze or was created when the snow pile melted and then refroze. Id. at 370.

 By declining to accept the “storm-in-progress rule” and yet adopting the “Connecticut rule,” the Supreme Judicial Court has left property owners, particularly those with business invitees, in the precarious situation of being exposed to liability once the first flake of snow has fallen. In order to limit their liability, property owners may no longer simply leave snow in its natural state, nor is it reasonable, as a matter of law, that they await the end of storm. With the guidance “act as a reasonable person under all of the circumstances” when conducting their snow removal and clean up, Papadopoulos, 457 Mass. at 383 (citations omitted), property owners now face uncertainty with every storm.

 See Manning v. S.R. Weiner & Assoc., Inc., 2011 WL 1468385 at *5 (Conn.Super. 2011) [51 Conn. L. Rptr. 584] (Connecticut trial court -applying Kraus to similar facts as here denied summary judgment and held that when property owner begins to clear lot before storm ends, they must do so reasonably and determination of reasonableness is reserved for jury); see also Marlatt v. Lubrizol Advanced Materials Inc., 2011 WL 1344460 at *3 (D.Mass. 2011) (denying summary judgment where property owner’s maintenance response during snowstorm was question for factfinder).